Again, I would like to... And just for the record, please reintroduce yourself. My name is Rod Berman. I represent the appellant, Manley Toys, in this appeal. I would like to reserve a few minutes of time for rebuttal. You may do so. And I also wanted to point out to the court that we had filed a motion to bring certain products to the court themselves. Before Judge Liu, there were photographs of the three products at issue. We received them. Right. And we haven't heard... Well, no, that was in COER-1. In COER-2, which is the Manley appeal, there are three other products that were not in evidence in the SLB trial. And we brought those. Before Judge Liu were the pictures of the three items. I have a question that I wanted to address actually to you, but also I hope that opposing counsel will respond to this question as well in this second case. Speaking only for myself, I have difficulty telling from the record that we have in front of us what the exact relationship is between SLB and Manley. Is it your view that there is sufficient evidence on the appellate record for us to be able to tell for sure what that relationship is? And if not, why shouldn't we remand this case to the district court to explore further what that relationship is to determine who is bound by the injunction? Well, there is insufficient evidence to make that determination before Judge Liu. And, of course, in the second appeal, it's only on behalf of Manley Toy Company, the producer and manufacturer of these products. I understand that. And the question is, are they bound? And if we can't answer that, why wouldn't we send it back to Judge Liu to further develop facts that would show whether or not they're sufficiently closely tied to be required to follow the injunction? Well, I think it would be – let me answer it in this way. The plaintiff, Wham-O, has had many opportunities to have that particular issue litigated and has chosen not to. Remember, the trial in the case was in 2007. They've had plenty of opportunity to seek to amend the judgment. They haven't taken an opportunity to amend the judgment. They've made allegations and they've filed papers with respect to this. And in this particular case, Your Honor, a number of the documents that were filed were not even filed with the court, were not considered by Judge Liu, were not even served upon Manley. So I don't believe it would be appropriate to amend back to Judge Rubin. So let's see if I understand your argument. Your argument is that we can't tell and, therefore, you win. I mean, that's basically your argument. No. Manley is a – no, I don't think that correctly characterizes the argument, Your Honor. I believe it is not an appropriate function to, in the Manley case, to remand back down to Judge Liu to make that determination. I believe it would be appropriate if WAMO chose to seek to amend its judgment in the SLB case to add Manley, et cetera. But in this case here, I don't believe it would be appropriate to man back. There's no motion pending. There's no proceeding pending whatsoever with respect to it. These are just bald accusations that have been made. There's no order that Judge Liu made with respect to them. And it's been an awful long time. And the – and, again, WAMO has had plenty of time to bring that issue before Judge Liu. It's threatened to do so every certain period of time. They said they're going to file a motion to amend, but they haven't. And the evidence before us, even to the extent it was considered, doesn't show any level of control necessary to link the two companies. And that's what would be required to link the two. Looking at the merits of the appeal, we believe that the – it was an abusive discretion for Judge Liu not to have granted the preliminary injunction for a variety of different reasons. Number one, one of the fundamental reasons for a preliminary injunction is to maintain the status quo. The status quo here is the state of affairs that occurred before the threatened act. And in our case, Manley had been selling these products for a number of years. A trial had gone on with respect to these products. There was never an accusation of cease and desist letter. There were never pseudos of them. Nothing happened. So the status quo that existed before the threat of infringement, the threat of interposing the injunction, was at a time that the products were being sold in commerce. So I believe that the preliminary injunction should have issued simply to have maintained that status quo. Now, on the element of – The standard, though, is to establish that there's a probability of success on the merits, is there not? You know, Your Honor, that's absolutely correct. And it's a difficult one for – Yeah, especially when it lost after a trial, which is the other case. Well, let's look at the evidence that was before Judge Liu in this case. So it's a difficult one because our client, in effect, has to show that WAMO is not going to prevail on an infringement case with respect to these three products. And I believe it's unquestionable that, number one, they cannot – adopt all of my argument that I made earlier. And, number two, cannot demonstrate in any fathom of mind that these products, which are all plainly labeled, they're large, they're very expensive. If you were to blow this up and take up half the room, these are very, very expensive large products could possibly be confused as to source with respect to – Well, that's actually a different question, though. You could be bound by – your client could be bound by the injunction, but the injunction might not cover certain products. But that's a different question than whether they're bound in the first instance. One has to do with who has to obey it, and the other its scope. And in terms of the who, I want to go back to my earlier question. The two companies, SLB and Manly, have the same CEO, correct? Or they did at one time in all of this. Chan? Yes, at one time. And then there was also another director who was common to the two. At one time. And the officers of SLB are bound by the injunction in the other case. The officers of SLB are bound by the injunction in the other case. So would they be bound here also individually? In other words, if the same person is the head of each of the two companies, and in case number one the CEO is bound to obey the injunction, when he puts on his other hat, is he still bound by the injunction? When he puts on the Manly hat, is he still bound? I think it would – I believe that you're correct in that. And I don't – I think it would be a difficult argument for me to make, that he puts on a different hat and suddenly is not bound by an injunction. I think that would be – So how is it the real question, the scope of the injunction, and whether it covers the giant Waterpark products, rather than who is to have to obey it? Well, you know, it's very, very interesting when you ask that question, because when in color one, when Wham-O asked Judge Liu to impound the allegedly infringing products, he asked him to impound them and destroy them, Judge Liu's order read, and it's on the record, I believe, Exhibit No. 6, said, the jury didn't find any specific design infringing. You can't even tell from the injunction that Judge Liu issued whether or not these products were infringing. Well, did you see clarification? Why isn't that just a matter for clarification? It was not our motion, Your Honor. Well, you could bring one, right? I mean, there's nothing to prevent you from asking for clarification, is there? Well, nothing to present us, but on the flip side of that, Your Honor, the plaintiff, Wham-O, never at all saw a motion for contempt, could have if it thought it was covered by it. It never went back to the court to argue that these particular slides were covered by that injunction. It never argued that, never took any of those steps to do that, and again, my client had been selling these for quite some time, including during the period of time for trial. The concerns that we also have about the preliminary injunction, at a minimum, because there are serious questions being dealt with here as to the validity of the mark, that should have been ground sufficient enough on the alternative test for a preliminary injunction for Judge Liu to have issued the injunction. You mean because the other case, because of the other, the status of the other case? Well, I believe, again, let me clarify that. I believe that there are serious questions going to the validity of their mark. Let's look at the evidence that was before Judge Liu in the manly injunction case. The only evidence that was before Judge Liu were declarations from our clients pointing out the functional features of the mark yellow. There was no evidence presented before Judge Liu as to the non-functionality. There was no evidence before Judge Liu as to infringement of these three particular products. You don't see any argument as to the sleek craft factors. In fact, what Wham-O did is they argued from color two that the intent, for example, of SLV somehow translated into the intent factor for manly. And so they have no evidence in the record before Judge Liu. I would like to reserve some time for rebuttal. You may do so, counsel. Thank you. Good morning again, Your Honors. Parker Bagley on behalf of Wham-O. I guess I will start with Judge Graber's question about the relationship of manly and SLV. And it's something that we are very vigorously pursuing, but it's very difficult to really get to the bottom of it due to a number of issues which aren't of record. What is of record is Judge Liu's comment that what SLV and manly and A&W are playing is a shell game. And I think that's very appropriate. What it shows, and as Mr. Berman just admitted, is that manly manufactures not only these inflatable slides that are shown here, but manufactures the orange slide package in the yellow slide box that was at issue in the SLV case. That was something that came out during trial, actually, through Mr. Dubinsky's testimony. And we're still pursuing that. Mr. Dubinsky said that manly and SLV were partners in this activity. But in terms of the precise corporate relationship, we are still pursuing that. In terms of the merits here on the appeal of the denial of a preliminary injunction, which is equitable relief that was in the discretion of Judge Liu, again, I think, as in the other earlier case, we have a threshold issue which we have briefed, and that is the one of mootness. This was a preliminary injunction that was sought well over a year ago. And in seeking it, the testimony is through a declaration of Benny Kong. It's found in the excerpts of record at page 55. Mr. Kong says, if we can't sell these products this summer, they will tear and they'll be unsaleable. But presumably, they could manufacture more. I mean, why isn't it the typical capable of repetition? Well, it's not as to what was at issue in the preliminary injunction, because those were products they said, if we can't sell them by the end of this summer, we need this injunction right away. We need a TRO. We need a preliminary injunction. I know, and you're saying that's moot because the products have deteriorated, but they can make new ones. They can make new ones, Your Honor, and they could seek an injunction against us enforcing against those products. But with respect to the products at issue, there is no repetition, not only for that reason, and I think the second thing that Mr. Kong says encompasses even the future products, he says at that time there is pending legislation which will prevent us from selling these if we don't sell them this summer. Okay. The pending legislation referred to a ban brought in the U.S. to violate the products, and as we cite and we presented to the court the National Resources Defense Case against the U.S. Consumer Product Safety Commission, that the only court that's addressed that new regulation said it does have retroactive effects. So these products at issue can never be sold. Even if the court were somehow to reverse this, the products can't be sold. So there is not a threat of repetition here. I'm not familiar with this ban.  Sure, Your Honor. There is, in these plastic products, there's a substance called phylates, P-H-T-H-A-L-A-T-E, and it's been found to be a carcinogen. And with respect to these products, there's a concern with children sliding on them and moreover blowing up the inflatable slides that if there's a threshold amount of phylates, they have been banned by the Consumer Product Safety Commission. Has this ban already been put into effect? The ban went into effect, I believe, January 1 or February 1 of 2009. Once again, the products can be reformulated and made again, and they'll look the same to a consumer, right? Correct, correct. New products could be, but with respect to what was at issue in this preliminary injunction, the whole argument of irreparable harm had to do with these particular products, not anything in the future. I'm sorry, go ahead. I was going to say, if they complied with the ban and manufactured products that did not include that carcinogen, we'd be back exactly where we were. Well, I don't think we would, Your Honor, because they're on notice now. If they were to do that, we have the underlying action which we're going to pursue, and Judge Liu can ultimately find whether these were within the scope of the injunction or, you know, whether they're infringing outside of the injunction. That's actually my next question to you. Is it your contention that the products that are sitting on the bench over there are within the scope of the injunction? Yes, absolutely, Your Honor, for two reasons. As you can see, they have yellow sliding surfaces, and they're water slides. That's, you know, the precise language that was used in the permanent injunction. And the other precise language that was used was the fact that this injunction extended to all, quote, in concert or participation with SLB. So going back to the precise relationship of Manley and SLB, it doesn't really matter. We know that they're acting in concert or participation. Mr. Berman just admitted it much by saying that Manley was the manufacturer and SLB, the record shows, is the U.S. distributor. So, yes. So if the issue were whether that's right or wrong for this product to be within the injunction, presumably, well, let me just say that differently. Do you agree or disagree with the proposition that they could make a motion to clarify or fix the injunction if that were appropriate? I agree entirely, Your Honor. We think the language of the permanent injunction is very precise, very clear, and not overly broad. It's consistent with this Court's prior jurisprudence, as we cited a couple of different cases, the GOTO versus Disney case and the Century 21 case, which had very similar broad language, you know, and injunction against any infringing mark or any similar or confusingly similar mark. So it's, you know, it's precise enough. They know whether their products have a yellow sliding surface, whether they're water slides. And so, you know, we feel that they're within the scope and they're clearly in concert or participation, if not the alter ego of SLB. That's something yet to be established. With regards to the merits of their claim, again, it's not necessarily, they have to show a likelihood of success on our infringement claim. But the real claim is that somehow we were brandishing this injunction improperly, when actually all we were doing was informing people of the fact that a permanent injunction had issued, and they should be mindful of that. In the letters to the retailers that were complained of, the order itself was attached. There were no, given the totality of the allegations in the letter, there was no false statements made to the retailers. These are all very big, sophisticated companies who have in-house counsel who can read a permanent injunction and decide for themselves whether their products are covered by it. And, in fact, they did decide that because they sent them back to Manly. So, and I think it's relevant also that Manly refused the request from the retailers to indemnify them, and I think that's a very telling refusal. Mr. Berman again alluded to the fact that in order to prove a likelihood of success, he's got to relitigate this functionality issue. We've talked about that earlier in the first appeal, but, in fact, there has been a jury verdict that this mark is non-functional, affirmed and upheld in Judge Liu's judgment, and, therefore, I think there is no likelihood of success that they can show, and certainly no irreparable harm. That's, as we say in the brief, that's demonstrated by their delay in taking this action for preliminary injunction. It was several months from the time they first learned that retailers were receiving these letters. And irreparable harm, by its nature, has to not be compensatable or compensable by monetary damages. It suggests that here, if they ultimately are correct and succeed, they can show the amount of damages or the amount of products that were sent back and put a monetary figure on this. So it would, by definition, not be irreparable harm. Thank you very much. Roberts. Thank you, counsel. Mr. Berman. I just want to briefly respond to a few points. I want to just correct something on the record. At the time of the judgment, the only officer of the court. Again, a little louder, please, Mr. Berman. I'm sorry. I'm sorry. At the time of the judgment, the only officer of SLB was Mr. Brian Dubinsky. There was no commonality of officers. And as to shareholders, there was no commonality of shareholders at that particular time as well. Are you still standing by the fact that Manley is the manufacturer of these items? Manley is the manufacturer of the items. But Manley, I understand that SLB in the case was not a distributor. They shipped FOB out of Hong Kong. So SLB is not a distributor. They didn't have a warehouse of these items whatsoever. And there's no evidence on the record that they were a distributor of these items. Again, that's in color one. On the mootness issue, I think you're correct on that. I'll just briefly point out the plastic can be reformulated to remove the thalate. In fact, the extreme irreparable harm in this case is that Manley can't sell with the injunction in place into the 2009 and 2010 season. It's being irreparably harmed as a result of that and certainly is capable of reformulating and does abide by the laws. Regarding the permanent injunction, as we've argued earlier, we believe that the injunction is incredibly overbroad and vague. And if, however, you look at the injunction in all four corners and as broadly as it would be, even in those cases, I don't believe that it should withstand scrutiny. In fact, on its face, it's invalid because the dilution laws themselves have a particular provision that precludes comparative advertising from being covered by the injunction, that this injunction would cover comparative advertising. The idea of an injunction having language such as similarity to it, as I'm not aware of any cases whatsoever where an appellate court affirmed an injunction having language such as similarity, particularly in the color case, where even if there were some rights, the color rights are going to be very, very narrow. As Professor McCarthy has repeatedly stated, this is uncharted territory. It's very unclear as to the precedence in law. What is similar and what is not similar? Is a light orange similar to a yellow? Certainly, at least in color one, Professor Hale said that they were quite dissimilar. Regarding the Century 21 and Go To cases, Century 21 was a word case, above the word century, completely unrelated to the services that were issued in that case, not something descriptive and common like in our case. The Go To case was found to be glaringly similar. It was a very complex mark. It was not a color case. It was a design mark with words and particular design features. That concludes my time in office. Do you have any other questions? No further questions. Thank you, Counsel. Thank you very much. The case just argued will be submitted for decision, and the Court will take a five-minute recess before hearing the last case.
judges: Goodwin, O'scannlain, Graber